

**JAKUB P. MEDRALA, ESQ.**
Nevada Bar No. 12822
**NICOLAS R. DONATH, ESQ**
Nevada Bar No. 13106
**Donath & Medrala Prof. LLC**
7866 W. Sahara Avenue
Las Vegas, Nevada 89117
(702) 475-8884
(702) 938-8625 Facsimile
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JAROSLAW JASTRZEBSKI; ZACHARY ENGLAND; DANIEL BERRO; CHRISTOPHER OBERLE; SETH DUHY; ROBERT SMITH; and SHANE ENGLE individually and on behalf of all others similarly situated,<br><br>**Plaintiffs.**<br><br>vs.<br><br>DAVID COPPERFIELD; CHRISTOPHER KENNER; DAVID COPPERFIELD'S DISAPPEARING Inc., a Nevada corporation; BACKSTAGE EMPLOYMENT AND REFERRAL, Inc., a Nevada Corporation,; and IMAGINE NATION COMPANY, a foreign corporation,<br><br>**Defendants.** | CASE NO.: **2:14-CV-00250**<br><br><br>**COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

/ / /

/ / /

1

COMPLAINT

# I.

## <u>INTRODUCTION</u>

1.     Plaintiffs Jaroslaw Jastrzebski ("Jastrzebski"); Zachary England ("England"); Daniel Berro ("Berro"); Christopher Oberle ("Oberle"); Seth Duhy ("Duhy"); Robert Smith ("Smith"); and Shane Engle ("Engle") (collectively "Lead Plaintiffs") individually and on behalf of all others similarly situated, allege for their Collective Action Complaint against David Copperfield ("Copperfield"); Christopher Kenner ("Kenner"); David Copperfield's Disappearing Inc. ("DCDI"); Backstage Employment and Referral, Inc., ("Backstage"); and Imagine Nation Company, ("Imagine Nation") (collectively, "Defendants") upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation made by their attorneys, as follows:

2.     The Lead Plaintiffs are, or were, workers employed by the Defendants as part of Copperfield's magic show that takes place at the MGM Grand Hotel and Casino, Las Vegas, NV ("The Magic of David Copperfield"). All Lead Plaintiffs were or are employed on positions that are not exempt from the overtime provisions of the Fair Labor Standards Act ("FLSA") and Nevada Law.

3.     The Lead Plaintiffs allege that the Defendants willfully failed to pay the Lead Plaintiffs and other similarly situated employees for overtime worked and unlawfully retaliated against Plaintiffs Jastrzebski, England and Smith in response to the Lead Plaintiffs' demand for overtime pay.

4.      The Defendant's practices are in direct violation of the FLSA 29 U.S.C. §201, *et seq.,* and the Nevada Wage and Hour laws. The Lead Plaintiffs seek compensation and credit for all uncompensated work required or permitted by the Defendants, liquidated damages, punitive damages, attorney fees and costs, and an injunctive relief against further retaliatory actions.

## II.

## <u>JURISDICTION</u>

5.      This action arises under the statutes of the United States for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.

6.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this matter arises as a result of alleged violations of federal law.

7.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' Nevada statutory wage claim as it forms part of the same case or controversy.

8.      Pursuant to 29 U.S.C. § 216(b), this Court has jurisdiction over this matter as an action brought by the Lead Plaintiffs as individuals and as a collective action brought on behalf of all current and former similarly situated employees of the Defendants.

9.      Venue is proper under 28 U.S.C. §1391, insofar as a substantial part of the events or omissions giving rise to the Lead Plaintiffs' claims occurred in the District of Nevada. Further, venue is proper because the Defendants do business in Nevada.

/ / /

COMPLAINT

## III.

## PARTIES

10.      Plaintiff Jastrzebski is a resident of Las Vegas, Nevada. Mr. Jastrzebski was employed by the Defendants from approximately January, 2011 to November, 2013. Mr. Jastrzebski worked as a stagehand and a show assistant for the Defendants. Mr. Jastrzebski worked hours in excess of forty (40) hours per week without receiving overtime compensation as required under both Nevada and federal law.

11.      Plaintiff England is a resident of Las Vegas, Nevada. Mr. England was employed by the Defendants from approximately April, 2010 to October, 2013. Mr. England worked as a stagehand and a show assistant for the Defendants. Mr. England worked hours in excess of forty (40) hours per week without receiving overtime compensation as required under both Nevada and federal law.

12.      Plaintiff Berro is a resident of Las Vegas, Nevada. Mr. Berro has been employed by the Defendants from approximately February, 2008 to present. Mr. Berro has worked as a stagehand, spotlight and a light-board operator for the Defendants. Mr. Berro has worked hours in excess of forty (40) hours per week without receiving overtime compensation as required under both Nevada and federal law.

13.      Plaintiff Oberle is a resident of Las Vegas, Nevada. Mr. Oberle has been employed by the Defendants from approximately June, 2012 to present. Mr. Oberle has worked as a stagehand and a camera operator for the Defendants. Mr. Oberle has worked hours in excess of forty (40) hours per week without receiving overtime compensation as required under both Nevada and federal law.

14.	Plaintiff Duhy is a resident of Los Angeles, California. Mr. Duhy was employed by the Defendants from approximately May, 2008 to May, 2012. Mr. Duhy worked as a stagehand and a show assistant for the Defendants. Mr. Duhy worked hours in excess of forty (40) hours per week without receiving overtime compensation as required under both Nevada and federal law.

15.	Plaintiff Smith is now a resident of a foreign country. Mr. Smith was employed by the Defendants from approximately July, 2011 to September, 2013. Mr. Smith was a stagehand and an assistant directly working with Copperfield on executing and installing Copperfield's proprietary "magic" inventions that were later used by Copperfield during the show. Mr. Smith worked hours in excess of forty (40) hours per week without receiving overtime compensation as required under both Nevada and federal law.

16.	Plaintiff Engle is a resident of Las Vegas, Nevada. Mr. Engle was employed by the Defendants from approximately August, 2012 to January, 2014. Mr. Engle worked as a stagehand and spotlight operator for the Defendants. Mr. Engle worked hours in excess of forty (40) hours per week without receiving overtime compensation as required under both Nevada and federal law.

17.	Defendant Copperfield is a resident of Las Vegas, NV engaged in production and performance of his own magic show. He is a well-known artist who became known for his unparalleled talents in magic and illusion. He invents, designs and directs his theatrical illusions that are the subject of The Magic of David Copperfield show.

18.	Defendant DCDI is a Nevada corporation wholly owned and controlled by Copperfield, engaged in production and performance of Copperfield's magic show.

19.     Defendant Backstage is a Nevada corporation directly or indirectly controlled by Copperfield and engaged in production and performance of Copperfield's show.

20.     Defendant Kenner is a resident of Nevada and an officer and the CEO of Backstage. Upon information and belief, he holds a significant ownership interest with significant operational control of Backstage.

21.     Defendant Imagine Nation is a foreign corporation wholly owned and controlled by Copperfield. Upon information and belief Imagine Nation is engaged in production and performance of Copperfield's show.

22.     At all relevant times, the Defendants employed the Lead Plaintiffs jointly, as this term is used under the FLSA, and each of them exercised control over the nature and structure of their employment. Specifically, without limitation, each of the Defendants had the power to hire and fire each of the Lead Plaintiffs and to determine the condition of their employment such as the amount of their wages, job duties, work schedules, discipline, and other job-related matters.

23.     The Defendants individually, through their substantial and significant involvement and contacts with the Lead Plaintiffs and other employees, are covered employers as defined by the FLSA and the Code of Federal Regulations and therefore are subject to the provisions of FLSA.

24.     The Defendants collectively, through their substantial and significant involvement and contacts with the Lead Plaintiffs and other employees, are covered employers as defined by the FLSA and the Code of Federal Regulations and therefore are subject to the provisions of the FLSA and other relevant laws.

## IV.

## GENERAL ALLEGATIONS

25.      The Defendants are engaged in the business of production and performance of The Magic of David Copperfield show.

26.      In the course of their business, the Defendants hired the Lead Plaintiffs to perform various functions at the show, as well as to assist Copperfield in his private affairs unconnected with the production of the show.

27.      The majority of the Defendants' employees, including the Lead Plaintiffs, were and are commonly referred to and classified by Defendants as "day-rate" employees who are designated to receive day-rate compensation for any and all days suffered or permitted to work by the Defendants. Their compensation depends upon the number of days worked in a given workweek.

28.      Under the FLSA, covered employees are required to receive an overtime hourly wage at a rate of 1 ½ times their normal hourly rate for hours worked in excess of forty during each and every workweek unless they qualify for a specific exemption contained in the FLSA.

29.      Under the FLSA and Nevada law, employers are required to keep timekeeping records that accurately reflect all hours worked by each employee and the compensation they received.

30.      The FLSA also prohibits discrimination or retaliation against any covered employee (including former employees) for attempting to assert his or her rights under the statute.

31.     The day-rate employees of the Defendants do not rightfully qualify for any of the exemptions found in the FLSA and therefore must be legally paid an overtime hourly wage for all hours worked in excess of forty during each and every workweek.

32.     The Defendants consciously implemented a system of coercion and deception aimed at denying employees their rights to overtime pay while forcing them to work an excessive amount of hours without pay.

33.     This system consisted, *inter alia,* of creating job titles for each and every employee that did not conform to reality. For instance, the majority of the employees engaged at the show had a job title of "Illusion Specialist/Creative Associate," even though they performed mundane functions of a stagehand, spotlight operator, light-board operator, electrician, show assistant, technician, etc. As another example, many employees responsible for running Copperfield's errands, doing laundry, shopping, moving, driving, etc. were given a job title of "Executive Assistant" and were denied overtime pay.

34.     Every week such employees would receive a paycheck that did not specify the hours or days worked during each week, or even a classification of such employees.

35.     Yet, despite the fact that the paycheck did not specify the amount of time worked by each employee, it was the Defendants' company-wide policy that the employees made a day-rate and that any absence of a given day would result in denial of pay.

36.     Indeed, for any workweek that the Lead Plaintiffs worked fewer days than their required quota, even if such an absence was necessitated by the Defendants' operating

requirements, the Defendants deducted pay from the Lead Plaintiffs' paychecks accordingly.

37.     Defendants did not maintain timekeeping records documenting the actual hours worked by the Lead Plaintiffs and other similarly situated day-rate employees.

38.     Moreover, to further the dependency of its employees, deter them from dissent, and motivate them to work long hours each day, the Defendants provided some of the Lead Plaintiffs with housing, the value of which was informally deducted from their pay.

39.     Very often the Defendants forced their employees to work 6-7 days a week for 10-14 hours a day without overtime pay.

40.     In addition, each time an employee would bring a question of overtime pay or the conditions of his or her employment to the Defendants, he was instantly intimidated to withdraw his demands.

41.     Instead of addressing the employees' demands, the Defendants reminded the employees of their unique chance to work for Copperfield and demanded sacrifice.

42.     In addition the employees were constantly reminded about their economic dependence on Copperfield and threatened by Copperfield's might and influence.

43.     Employees were also constantly reminded that they were bound by "secrecy agreements" that purportedly prohibit them from discussing the conditions of their employment with the outside world.

44.     On numerous occasions, the Defendants made it clear to their employees that any dissent would be punished.

45.     As a result of this coercive system, throughout the years the Defendants were able to exploit their employees while earning tens of millions of dollars from their labor.

46.     Nevertheless, in 2013 the situation among the employees reached a boiling point and some of the Defendants' employees decided to breach the silence and seek legal help.

47.     Consequently, on December 29, 2013, through an e-mail addressed to the Lead Plaintiffs form their attorney, the Defendants learned that some of their employees were preparing a legal action against them.

48.     In response, the Defendants immediately took steps to collectively intimidate and exemplary punish their employees by a threat of a preemptive legal action based on alleged breaches of "secrecy agreements."

49.     On December 31, 2013, the Lead Plaintiffs served upon Copperfield, DCDI, and Backstage, a demand letter for the payment of overtime wages, liquidated damages, penalties and attorneys fees.

50.     In response, on January 3, 2014 the Defendants commenced a frivolous lawsuit in the Eight Judicial District Court of Nevada (Case # A-14-693932C) with a retaliatory intent to punish the most vocal Plaintiffs Jastrzebski, England, and Smith, and to deter those employees who were still considering an action against the Defendants for overtime violations.

51.     In order to mask their true intentions yet still achieve the deterrent effect, the Defendants named in their Complaint only the main three initiators of the overtime claims, and added a few "token" defendants claiming breach of "secrecy agreements."

52.     The allegations of the Defendant's complaint were a pretext for retaliation in violation of the FLSA.

53.     The Defendants would not have filed the complaint against Plaintiffs Jastrzebski, England, and Smith had these Plaintiffs not engaged in their protected activities.

54.     Concurrently to filing the complaint, however, in order to create divisions among their current and former employees and to discourage remaining employees from pursuing their overtime claims, the Defendants offered all of their remaining employees a raise and promised to pay overtime and maintain employee records.

55.     All of these actions were essentially the embodiment of the "carrot-and-stick" philosophy to induce the remaining employees to submit to the Defendants' wishes, while tacitly threating them with a lawsuit in case they do not comply.

56.     Concurrently, the Defendants Copperfield, DCDI, and Backstage offered the Lead Plaintiffs to enter into a tolling and a not-to-sue agreement allegedly for the purpose of discussing an early resolution of the Lead Plaintiffs' claims.

57.     However, at the time the tolling and the not-to-sue agreement was signed, the Defendants Copperfield, DCDI, and Backstage did not disclose to the Lead Plaintiffs the fact that they already commenced a lawsuit against Jastrzebski, England, and Smith.

58.     Upon information and belief, the Defendants Copperfield, DCDI, and Backstage entered into the tolling and not-to-sue agreement in bad faith for the purpose of delay, hindrance, and to prevent the Lead Plaintiffs from asserting their rights and the rights of other similarly situated employees of the Defendants.

59.     Had the Lead Plaintiffs known that the Defendants sued Jastrzebski, England, and Smith, they would have not entered into the not-to-sue agreement.

60.     The failure of the Defendants to pay the Lead Plaintiffs and other day-rate employees the overtime wages legally due them is a violation of the FLSA and Nevada law.

61.     The inaccurate timekeeping records kept by the Defendants, or the lack thereof, related to the Lead Plaintiffs and other day-rate employees is a violation of the FLSA and Nevada Law.

62.     The retaliatory acts of the Defendants in commencing the lawsuit against Jastrzebski, England, and Smith for engaging in protected activity is a violation of the FLSA and Nevada law.

63.     This collective action brought by the Lead Plaintiffs on behalf of themselves and all other similarly situated day-rate employees of the Defendants, arises from an ongoing illegal and improper scheme perpetuated by the Defendants to systematically and willfully violate the provisions of the FLSA by knowingly and deliberately failing to pay a class of current and former day-rate employees the overtime wages legally due them under the FLSA.

COMPLAINT

64.     Defendants exercised control over the wages, hours and working conditions of all non-exempt employees, including the Lead Plaintiffs.

65.     For the time frame relevant to this lawsuit, all decision(s) regarding whether or not to pay all legally due wages to the Lead Plaintiffs and other day-rate employees was done with the knowledge, approval and at the direction of the Defendants.

66.     The Defendants knew or should have known that their policies regarding payment of wages as described herein violated the FLSA and Nevada statutes and are therefore responsible for such failures.

67.     The actions of the Defendants in failing to comply with the provisions of the FLSA and Nevada law were deliberate and willful.

68.     For the time frame relevant to this lawsuit, the illegal policies and practices described herein are part of a centralized policy, practice and scheme developed and orchestrated by the Defendants for the purpose of their enrichment and benefit.

69.     The actions of the Defendants in not paying all legally required overtime wages to the Lead Plaintiffs and to those similarly situated Defendants' employees has resulted in economic damage to the Lead Plaintiffs and those similarly situated employees.

/ / /

/ / /

/ / /

**V.**

COMPLAINT

## COLLECTIVE ACTION ALLEGATIONS

70.     Lead Plaintiffs bring their First Cause of Action for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA 29 U.S.C. § 216(b), on behalf of all persons who were, are, or will be employed by the Defendants as similarly situated, non-managerial, day-rate employees who are entitled to unpaid overtime in Nevada and throughout the at any time within the applicable statue of limitations period, who have not been compensated at a rate of one and a half times their regular pay rate for all hours worked in excess of forty (40) hours per work week. All of these employees received or currently receive their paychecks from Backstage.

71.     The First Cause of Action for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 16(b) of FLSA 29 U.S.C. § 216(b), as prospective members of the FLSA Collective Action are similarly situated to the Lead Plaintiffs and have claims that are similar to the Lead Plaintiffs First Cause of Action.

72.     Questions of law and fact common to the collective action as a whole include, but are not limited to, the following:

   a)   Whether the Defendants unlawfully failed and continue to fail to pay overtime compensation in violation of the FLSA 29 U.S.C. § 201 *et seq.;*

   b)   Whether the Defendants' failure to pay overtime to the FLSA Collective Action Plaintiffs was willful within the meaning of the FLSA;

   c)   Whether the Defendants failed and continue to fail to maintain accurate records of actual time worked by the FLSA Collective Action Plaintiffs;

d)   Whether the Defendants failed and continue to fail to record or report all actual time worked by the FLSA Collective Action Plaintiffs;

e)   Whether the Defendants failed and continue to fail to provide accurate wage statements itemizing all actual time worked and wages earned by the FLSA Collective Action Plaintiffs; and

f)   Whether the Defendants' policies and practices described herein are part of a centralized policy, practice and scheme developed and orchestrated by the Defendants for the purpose of denying Lead Plaintiffs and the FLSA Collective Action Plaintiffs overtime pay.

73.     Lead Plaintiffs and the FLSA Collective Action Plaintiffs are similarly situated and are subject to the Defendants' common practice, policy or plan of refusing to compensate all hours worked and refusing to pay overtime in violation of the FLSA.

74.     The names and addresses of the FLSA Collective Action Plaintiffs are available from the Defendants, and notice should be provided to the FLSA Collective Action Plaintiffs *via* first class mail to their last known address as soon as possible.

75. As appropriate, the Lead Plaintiffs reserve the right to amend and supplement the definition of the previously outlined class of similarly situated individuals as information is disclosed and uncovered through future discovery.

/ / /

/ / /

**VI.**

## FIRST CAUSE OF ACTION

### (Violation of the FLSA, 29 U.S.C. § 201 et seq.)

76.     Lead Plaintiffs repeat and incorporate the allegations contained in Paragraphs 1-75 above as fully set forth herein.

77.     The Defendants individually and collectively are employers as defined by the FLSA and are liable to the Lead Plaintiffs and FLSA Collective Action Plaintiffs for failure to pay overtime wages.

78.     Lead Plaintiffs and FLSA Collective Action Plaintiffs do not rightly qualify for any of the exemptions to the payment of overtime wages outlined in the FLSA and should rightly be paid overtime wages for all hours worked over forty in any and all workweeks.

79.     Lead Plaintiffs and FLSA Collective Action Plaintiffs routinely worked, and continue to work, in excess of forty hours during their workweek without receiving overtime compensation in violation of the FLSA.

80.     As a result of the illegal and improper policy of the Defendants regarding the payment of overtime wages as previously outlined, the Lead Plaintiffs and FLSA Collective Action Plaintiffs have suffered economic damages in an amount to be proved at trial.

81.     The policy of the Defendants to not pay legally required overtime wages to the Lead Plaintiffs and FLSA Collective Action Plaintiffs was willful, thereby entitling the Lead Plaintiffs and FLSA Collective Action Plaintiffs who opt-in to this case to recover damages and collect overtime wages for the three years preceding December 31, 2013

in case of the Lead Plaintiffs, or for three years preceding the time any FLSA Collective Action Plaintiffs opt-in to this case.

82.        As provided for under federal statute, the Defendants are also liable to the Lead Plaintiffs and FLSA Collective Action Plaintiffs for all other available damages, including liquidated damages, penalties, and reasonable attorneys' fees and costs.

**VII.**

**SECOND CAUSE OF ACTION**

**(Retaliation in violation of the FLSA)**

83.        Lead Plaintiffs repeat and incorporate the allegations contained in the Paragraphs 1-82 above as fully set forth herein.

84.        The December 31, 2013 demand letter, together with the December 29, 2013 e-mail concerning the Lead Plaintiffs' claims constituted protected activity under the FLSA.

85.        The Defendants unlawfully sued, discriminated and otherwise retaliated against Plaintiffs Jastrzebski, England, and Smith in whole or in part for engaging in protected activity under the FLSA.

86.        The actions of the Defendants as described herein constitute an adverse employment action designed to deter the protected activity and violate the anti-retaliation provisions of the FLSA as outlined in 29 U.S.C. § 215.

87.        As a result of the retaliatory actions of the Defendants, Plaintiffs Jastrzebski, England and Smith have suffered and will continue to suffer economic damages in an amount to be proved at trial.

88.     As a result of the retaliatory actions of Defendants, Plaintiffs Jastrzebski, England, and Smith are entitled to collect all remedies available to them under the FLSA including liquidated damages, attorneys' fees and costs and punitive damages.

**(Injunctive Relief Allegations)**

89.     The lawsuit against Plaintiffs Jastrzebski, England and Smith poses a real threat to the participation of the Lead Plaintiffs and FLSA Collective Action Plaintiffs in this Action.

90.     There is a real risk that the Defendants' retaliation will deter individuals from either joining this Collective Action or cooperating in its prosecution.

91.     Lead Plaintiffs and FLSA Collective Action Plaintiffs have no adequate remedy at law to redress the wrongs herein alleged. Unless enjoined by this Court, the Defendants will continue to violate their employees' rights to assert overtime claims under the FLSA and Nevada Law.

92.     Unless enjoined by this Court, the Defendants' lawsuits against Plaintiffs Jastrzebski, England and Smith will cause many FLSA Collective Action Plaintiffs to forgo their overtime claims in fear of retaliation.

93.     Unless enjoined by this Court, the Defendants' lawsuits against Plaintiffs Jastrzebski, England and Smith will also continue to deter the enforcement of the FLSA and Nevada law. Any such deterrent effect, even if only temporary, will effectively eliminate claims of many FLSA Collective Action Plaintiffs due to the continuous running of the statute of limitations for their claims.

94.     Lead Plaintiffs therefore seek preliminary and permanent injunctive relief against Defendants Copperfield, DCDI, Backstage and Imagine Nation enjoining them from prosecuting their lawsuit against Plaintiffs Jastrzebski, Engle, and Smith and any other similarly situated day-rate employees of the Defendants pending the resolution of this Collective Action.

95.     In addition, the Lead Plaintiffs seek preliminary and permanent injunctive relief against the Defendants enjoining them from otherwise discriminating and retaliating against Lead Plaintiffs and other similarly situated day-rate employees of the Defendants.

## VIII.

## THIRD CAUSE OF ACTION

### (Failure to Pay All Wages Due and Owing Upon Termination Pursuant to NRS 608.020-608.050)

96.     Lead Plaintiffs repeat and incorporate the allegations contained in the Paragraphs 1-95 above as fully set forth herein.

97.     Plaintiffs Duhy, Smith, Jastrzebski, Engle, and England, bring this Third Cause of Action pursuant to Nevada Revised Statutes § 608.040.

98.     Plaintiffs Duhy, Smith, Jastrzebski, Engle, and England were discharged or resigned from their employment with the Defendants and at the time of such discharge or resignation were owed unpaid wages, specifically the unpaid overtime wages, by the Defendants.

99. The Defendants have failed and refused to pay Plaintiffs Duhy, Smith, Jastrzebski, Engle, and England their full earned but unpaid wages, such conduct by the Defendants constituting a violation of N.R.S. § 608.020, or § 608.030 and giving rise to a claim under N.R.S. § 608.040.

100.     As a result of the foregoing, Plaintiffs Duhy, Smith, Jastrzebski, Engle, and England are entitled to a judgment against the Defendants for the penalty prescribed by Nevada Revised Statutes § 608.040, to wit, for a sum equal to up to thirty days wages, along with interest, costs and attorney's fees.

## IX.

## FOURTH CAUSE OF ACTION

### (Civil Conspiracy)

101.     Lead Plaintiffs repeat and incorporate the allegations contained in the Paragraphs 1-100 above as fully set forth herein.

102.     As alleged above, the Defendants, by acting in concert, have conspired in order to discriminate and otherwise retaliate against the Lead Plaintiffs and other similarly situated day-rate employees of the Defendants in violation of the FLSA and Nevada law.

103.     The Defendants and their actions collectively, and/or in concert, have caused Plaintiffs Jastrzebski, England, and Smith damages and deterred other similarly situated day-rate employees of the Defendants from asserting their rights under the FLSA and Nevada law.

104.     Plaintiffs Jastrzebski, England, and Smith have suffered damages as a direct and proximate result of the action of the Defendants.

105.     In taking the aforementioned actions, the Defendants acted intentionally, maliciously and oppressively and Plaintiffs Jastrzebski, England, and Smith, therefore, are entitled to recover punitive damages from the Defendants.

106.     As a result of the actions of the Defendants, Plaintiffs Jastrzebski, England, and Smith are entitled to collect attorney's fees form the Defendants.

## X.

## FIFTH CAUSE OF ACTION

### (Abuse of Process)

107.     Lead Plaintiffs repeat and incorporate the allegations contained in the Paragraphs 1-106 above as fully set forth herein.

108.     The Defendants commenced the lawsuit against Plaintiffs Jastrzebski, England, and Smith for the purpose of harassing, discriminating, and retaliating against them for asserting their rights under the FLSA and to deter other similarly situated day-rate employees from asserting their rights.

109.     The Defendants willfully and improperly used and continue to use the lawsuit against Plaintiffs Jastrzebski, England, and Smith to harass, discriminate and retaliate against them, and to deter other similarly situated day-rate employees from asserting their rights.

110.     Plaintiffs Jastrzebski, England and Smith have suffered damages as a direct and proximate result of the Defendants' actions.

111.    In doing the things aforementioned, the Defendants acted intentionally, maliciously and oppressively and Plaintiffs Jastrzebski, England and Smith, therefore, are entitled to recover punitive damages from the Defendants.

112.    As a result of the actions of the Defendants, Plaintiffs Jastrzebski, England, and Smith are entitled to collect attorney's fees from the Defendants.

**XI.**

**JURY DEMAND**

113.    Lead Plaintiffs on behalf of themselves and on behalf of FLSA Collective Action Plaintiffs demand a trial by jury upon all issues herein.

**WHEREFORE**, Lead Plaintiffs pray for a judgment against the Defendants as follows:

A.  Declare and certify that this action can proceed as a collective action on behalf of the Lead Plaintiffs and the class of similarly situated current and former day-rate employees of the Defendants who have not received all overtime wages legally due to them as described above;

B.  That this Court should give or authorize notice to all similarly situated day-rate employees informing them of the opportunity to join or "opt in" to this collective action through the filing of consent to join forms with the Court;

C.  Declare that the Lead Plaintiffs and those similarly situated who opt-in to this collective action are legally entitled to collect all overtime wages owed them and that the policy of Defendants to not pay overtime wages is illegal and in violation of the FLSA;

D. Enter a judgment against the Defendants in an amount to be proved at trial as compensation to the Lead Plaintiffs and all those similarly situated who opt-in to this collective action for the overtime wages that the Defendants illegally and improperly withheld in violation of the FLSA;

E. Declare that the actions of the Defendants in failing to pay overtime wages were willful and that a three year statute of limitations preceding December 31, 2013 should apply for the Lead Plaintiffs' claims pursuant to the tolling agreement, and a three year statute of limitations preceding the time when all those similarly situated employees of the Defendants opt-in to this collective for collecting the overtime wages properly due them;

F. Declare that the Lead Plaintiffs and all those similarly situated who opt-in to this Collective Action are entitled to collect liquidated damages, and prejudgment interest on such liquidated sums at the highest legal rate allowable;

G. Award the Lead Plaintiffs and all those similarly situated who opt-in to this collective action their reasonable attorneys' fees, expenses and costs and all other remedies and recoveries available to them under the FLSA;

H. Declare that the actions of the Defendants suing and discriminating against Plaintiffs Jastrzebski, England and Smith as described above violate the anti-retaliation provisions of the FLSA;

I. Enjoin the Defendants from pursuing the ongoing lawsuit against Plaintiffs Jastrzebski, England and Smith, and enjoin the Defendants from otherwise discriminating and retaliating against the Lead Plaintiffs and other similarly situated day-rate employees of the Defendants.

J.  Order that the Defendants pay Plaintiffs Jastrzebski, England, and Smith compensatory damages and punitive damages sufficient to punish Defendants and deter retaliatory conduct in the future;

K.  Award the Lead Plaintiffs interest on all sums awarded in judgment at the highest legal rate allowable from the date of judgment until paid;

L.  Award Plaintiffs Jastrzebski, England, Smith, Engle and Duhy penalties for their unpaid wages under N.R.S. § 608.040;

M.  Retain jurisdiction over this action to ensure full compliance with the Court's orders and require the Defendants to file such reports as the Court deems necessary to evaluate such compliance;

N.  For such other further relief as the Court deems just and proper under the circumstances.

DATED this 15th day of February 2014.

**Donath & Medrala, Prof. LLC**

/s/ Jakub P. Medrala

_____

**JAKUB P. MEDRALA, ESQ.**
Nevada Bar No. 12822
**NICOLAS R. DONATH, ESQ.**
Nevada Bar No. 13106
7866 West Sahara Avenue
Las Vegas, Nevada 89117
702-475-8884
jmedrala@domelaw.com
Attorneys for Plaintiffs

24

COMPLAINT